F. J. ROSS CO., INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 7281.        Promulgated June 7, 1927.

1. Petitioner was not entitled to classification as a personal service corporation during the taxable year.

2. An amount authorized as a drawing account for the president of the petitioner was a proper deduction from gross income as an ordinary and necessary business expense incurred in the taxable year.

*Benjamin Mahler, Esq.*, for the petitioner.
*J. Arthur Adams, Esq.*, for the respondent.

The respondent asserts a deficiency in income and profits tax for the period from March 15 to December 31, 1920, in the amount of $7,361.85. The petitioner raises two issues: (1) That it is entitled to classification as a personal service corporation, and (2) that it had no taxable income in the year 1920.

### FINDINGS OF FACT.

The petitioner is a New York corporation with its principal place of business in the City of New York. It was incorporated early in March, 1920, and began operations March 20 of that year. During the taxable period it had outstanding 512 shares of capital stock of the par value of $100, each, all issued for cash. Of this stock, 510 shares were the property of F. J. Ross. One share, each, was in the names of C. M. Seymour and Norwood Weaver. It is not clear whether the shares of Seymour and Weaver were paid for and owned by them or were transferred or issued to them by Ross as qualifying shares. During the taxable period Ross, Weaver, and Seymour, were the executives of the petitioner, and held the offices of president, vice president, and secretary-treasurer, respectively.

The business of the petitioner is the operation of an advertising agency. Merchants, manufacturers, and others, desiring to secure larger markets for their wares, are its clients. The activities consist in securing clients, in conferring with them, in formulating advertising policies, in preparing advertising text and illustrations, in contracting for space in periodicals, and in furnishing clients with information and advice as to the best methods of merchandising their commodities to the public. The business is departmentalized as follows:

*Account Execution:* Men whose principal work under the direction of Ross is handling the accounts of the various clients.

*Accounting:* Bookkeepers who keep all the petitioner's books and accounts and bill clients for services rendered.

*Art:* Under an art director does hand lettering and rescaling of pictures for illustrations. During the taxable period no art work was done by the director except after conference with Ross.

*Contracts:* Employees in this department keep records of the circulation and distribution of periodicals and of advertising rates charged by publications, place all orders for space used by clients, check all periodicals to see that orders for space are executed as provided by contract.

*Copy:* This department prepares the text used in various forms of advertising. No new copy was written during the taxable period except after conference with Ross.

*Mechanical:* Plate making, typesetting, *and* mat making and similar mechanical work is done or supervised by the personnel of this department.

*Research:* Under the immediate direction of Ross, the employees of this department assembled, filed, and indexed data necessary in planning advertising campaigns for clients. This information was largely secured by questionnaires which when filled out were assembled and analyzed and became the bases of recommendations which Ross made to clients.

The executives held daily conferences in which policies were discussed and decided. No formal meetings of stockholders or directors were held during the period in question, nor was there ever any record or minutes of the informal daily conferences or meetings.

Prior to the organization of the petitioner, Ross had been an executive of the Blackman-Ross Co., which conducted an advertising agency in New York, and, for the last three years of his connection with such company, received compensation in the average amount of $27,000 per annum. When he organized the petitioner, Ross brought into the business eight valuable accounts which he had handled for the Blackman-Ross Co., and such accounts yielded about 95 per cent of the income earned by the petitioner during the period in question.

Ross calls himself an advertising counsel. He solicits business, advises with clients, makes studies of the merchandise to be sold, and of the markets, briefs all information connected with the business advertised, confers with clients, has copy and designs prepared; with consent of clients, selects periodicals as advertising media, contracts for space, and, through his organization, sees that all orders are executed according to terms of contracts with clients and publishers.

The petitioner's income, for the most part, is derived from differentials between the prices paid to periodicals for space and its charges to clients for services. Such differential averaged about 13 per cent of the contract price for space used during the taxable year. Clients are billed for services on or about the 15th of each month, and payments for current service are usually received before the end of the month. Publishers bill the petitioner for space orders about the 25th of each month. Collections from clients are usually received in time to meet all billings for space. Orders to publishers usually provide for a 2 per cent discount if bills are paid before the 10th of the succeeding month, and contracts with clients for a 2 per cent discount, if bills are paid by the 10th. These discounts balance each other, except when clients fail to pay on time to secure discounts, in which case the publishers' discount becomes income to the petitioner. During the taxable year the petitioner paid for all space in time to secure the 2 per cent discount. Contracts with publishers provided for payment for space by the petitioner.

The balance sheets of the petitioner at March 20 and December 31, 1920, are as follows:

| | Mar. 15, 1920 | Dec. 31, 1920 |
|---|---|---|
| Assets: | | |
| Cash | $50,000.00 | $12,400.27 |
| Accounts receivable | | 62,814.83 |
| Investments | | 200.00 |
| Furniture and fixtures | $17,118.13 | |
| Less reserve for depreciation | 1,283.86 | |
| | | 15,834.27 |
| Advertising work in progress | | 2,862.42 |
| | 50,000.00 | 94,111.79 |
| Liabilities: | | |
| Accounts payable | | 17,472.99 |
| Capital stock | 50,000.00 | 51,200.00 |
| Undivided income for year 1920 | | 25,438.80 |
| | 50,000.00 | 94,111.79 |

The following is a statement of the income and expenditures of the petitioner for the taxable period:

Income:

| | | |
|---|---|---:|
| Commissions and fees | | $139,907.14 |
| Cash discounts | | 1,260.53 |
| Bank interest | | 734.55 |
| | | 141,902.22 |

Less:

| | | | |
|---|---:|---:|---:|
| Department expenses, five departments | $1,334.82 | | |
| Administration expense, depreciation on furniture and fixtures | $1,283.86 | | |
| General expenses | 9,732.59 | | |
| Postage | 620.49 | | |
| Advertising | 2,092.97 | | |
| Rent | 15,642.85 | | |
| Stationery and supplies | 4,736.98 | | |
| Taxes | 50.00 | | |
| Telegrams | 255.70 | | |
| Telephone | 865.32 | | |
| Travel | 3,820.09 | | |
| | | 39,110.85 | |
| Pay roll: | | | |
| Account executives | 9,742.64 | | |
| Accounting department | 2,378.00 | | |
| Art department | 8,857.40 | | |
| Checking department | 1,200.00 | | |
| Contract department | 4,120.00 | | |
| Copy department | 11,123.20 | | |
| General office | 5,954.50 | | |
| Mechanical department | 6,201.76 | | |
| Research department | 2,857.25 | | |
| Shipping department | 1,816.34 | | |
| Stenographic department | 4,400.68 | | |
| | | 58,651.77 | |
| Officers' salaries: | | | |
| Vice president | 8,481.06 | | |
| Secretary | 8,884.92 | 17,365.98 | 116,463.4 |
| Net income | | | 25,438.8 |

At the beginning of operations the directors of the petitioner determined that Ross should have a drawing account of $400 per week. For some time this amount was paid to Ross each week, but, later in the year, such payments were discontinued and the amounts theretofore paid to Ross were returned to the petitioner. No other formal corporate action fixing compensation for Ross was taken during the year, but the matter was often discussed in the presence of the directors, and it was the understanding of all that Ross should receive all the net earnings of the petitioner for the year 1920 as his salary for such year. Early in 1921, the amount of $25,438.80 was

credited to Ross on the books and he was given four notes of the corporation in that aggregate amount. These notes were all paid during the year 1921, and the amounts thereof, were included by Ross in his personal income-tax return for such year, and the Federal tax thereon was paid.

The petitioner made a personal service corporation return of income for the period herein involved, in which it took no deduction from gross income on account of salary for Ross paid or incurred during the taxable term. Upon audit of such return the respondent disallowed personal service classification, and determined the deficiency here in controversy, without the allowance of any deduction from gross income on account of salary for Ross. The amount of $400 per week was a reasonable salary for the services rendered by Ross during the taxable year.

OPINION.

LANSDON: The record contains evidence that convinces us that capital was a material income-producing factor during the taxable period. In addition to Seymour and Weaver, who were designated as officers and apparently were stockholders only to the extent necessary to qualify them as directors, there were " account executives " and other employees who, during the period here involved, received pay in the total amount of $58,651.77. We believe that such an expenditure must have been for the purpose of securing additional income, and it is reasonable to assume that services secured at such cost were of an income-producing nature. It is evident that much of the income of the petitioner was produced by employees who were not stockholders.

In its income and profits-tax return, in which it claimed personal service classification, the petitioner made no deduction from gross income on account of salary for services rendered by its principal stockholder and president, Ross. In the event that the Board finds that it is not entitled to personal service classification during the taxable year, the petitioner makes the alternative contention that it is entitled to deduct from its gross income a reasonable salary for its president, who was chief executive and general manager. The petitioner is a close corporation operating under the laws of New York. Informal action of the directors of such corporation in that State is sufficient to create salary liability.

To bring itself within the statute providing for the deductions here claimed, the petitioner must prove that it either paid the salary or incurred a liability for such payment in 1920. At the very beginning of the petitioner's operations it was determined by informal

corporate action that Ross should have a drawing account in the amount of $400 per week.

It is alleged that the drawing account provided for Ross by the petitioner was not intended to represent and did not represent the full measure of his compensation and that from the very first it was clearly understood, and the directors of the petitioner all agreed that, for the taxable period here involved, Ross should receive all the net profits as his salary. Shortly after the close of the year 1920, and prior to the closing of the petitioner's books of account thereof, this understanding was carried out, and Ross was paid the amount of $25,438.80, as his compensation for personal services rendered during the year 1920. The necessary entries and adjustments were made on the books as of that year. That one of the several entries required to complete the record was erroneously dated in January, 1921, is not material, since all the accounting entries relating to the salary in question were adjustments of the petitioner's books for 1920. If the petitioner incurred a salary for Ross during the taxable year its liability therefor can not be affected by accounting entries whether made in error or otherwise, as it is now well established that tax liability may not be determined by mere bookkeeping entries. In the light of all the evidence, we are convinced that the petitioner incurred liability for a salary for Ross during the taxable period.

Having decided that the petitioner incurred liability for salary to Ross for services rendered in the year 1920, we must now determine the amount of such liability. The evidence discloses that Ross had drawn an average salary of $27,000 for three years preceding his organization of the petitioner; that he was then generally known as a competent, successful and experienced advertising man; that other concerns were ready to employ him at a salary much higher than the amount here in controversy; and that the large earnings of the petitioner were due largely to his knowledge, ability, and industry. All these averments may be admitted without in any way strengthening or affecting the claim of this petitioner. The salaries drawn by Ross from previous employers, or that may have been offered him during the taxable year, can hardly be regarded as fair measures of the value of his services to the petitioner. The reasonableness of salary for services rendered relates more closely to the value of such services to the employer than to the competency or ability of the man employed. A man worth $75,000 per year to one corporation may not be worth half that amount to another engaged in a similar business, if the opportunities for producing income are less by half or more.

We are convinced that a liability to pay Ross a salary in the amount of $400 a week was established by proper corporate action and that, in the circumstances of this petitioner, such a salary was

reasonable. In the light of all the evidence, we are of the opinion that the petitioner is entitled to deduct from gross income for the taxable year the amount of $400 per week from March 15 to December 31, 1920, as salary for its president.

> *Judgment will be entered on 15 days' notice. under Rule 50.*